### COCHRAN *v.* SHULL.

Opinion delivered November 9, 1914.

BILLS AND NOTES—FRAUD—BURDEN OF PROOF.—Evidence of illegality or fraud in the origin or transfer of commercial paper throws on the holder the burden of proving his good faith.

Appeal from Sevier Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

#### STATEMENT BY THE COURT.

Appellant instituted this suit against the appellee on a promissory note for $374.70, payable in installments of $62.45 each, due respectively in two, four, six, eight, ten and twelve months after date. Appellee denied liability on the note sued on. The appellant introduced the note,

which was for value received and made payable to the order of the Equitable Manufacturing Company, and was endorsed as follows: "Pay to the order of J. C. Cochran," and signed by the Equitable Manufacturing Company.

The appellee testified that the order was given to the Equitable Manufacturing Company (which we will hereafter designate "company") for jewelry. The order and the note, a copy of which was attached to the order, were not to become a contract between the appellee and the company until they sent the appellee notes covering each of the payments specified in the order. Appellee signed the order, but he did not sign the notes. They were to send appellee the notes, and then he was to sign them if they suited him, and they did not send them. Appellee was to write and notify the company, after examining the contract, if it was unsatisfactory to him, and the order was signed by appellee with the express understanding that it should not take effect until it had been examined and found to be satisfactory to appellee. That was the understanding between the company's agent who took the order and the appellee. Appellee thought that his signature was at the bottom of the note, but that the blanks for the amount of the installments were not filled in. The figures were not in the note that was left with him. He told the agent at the time that he was busy and did not have time to "look over his business," and the agent said that he could look over it when he had time. He would leave him a copy and take a copy. Stated that he would not send in the contract for one or two days, and that appellee could write and countermand it if he didn't like the contract after looking over it. The order and the note in suit bear date October 27, 1910. On that date the company wrote the appellee, acknowledging receipt of the order given their agent and advising him that the order "had been approved and shipment of same is going forward at once." The appellee wrote the company the next day after he had looked over the order, countermanding the same, and he received a letter in an-

swer from the company, dated November 2, 1910, in which they advised appellee that his communication was received too late to prevent the shipment of the goods; stated that they had acted in good faith upon the contract with appellee, had shipped him the goods called for, and requested that he carry out the conditions of the order. The goods described in the order were billed by the express company out of Chicago on June 7, 1911; were received in the office of the express agent at Horatio between the 9th and the 12th of June, 1911. The appellee was notified by the express agent at Horatio of the arrival of the goods, and appellee refused to receive them.

There was a bond executed by the company in which appellant was surety, dated November 2, 1910, the date on which the company wrote the appellee, acknowledging receipt of his letter countermanding the order. The letter which the appellee wrote the company countermanding the order was mailed October 28, 1910. It should have reached Chicago not later than the 30th of October.

At the conclusion of the testimony, the appellant asked a peremptory instruction, which the court refused. The court instructed the jury, and no exceptions were reserved to the rulings of the court in giving or refusing instructions.

The verdict and judgment were in favor of the appellee.

One of the grounds in the motion for a new trial was that the verdict was contrary to the evidence. Appellant duly prosecutes this appeal.

*A. F. Auer,* for appellant; *E. A. Kennedy,* of counsel.

The court should have directed a verdict for appellant. When appellee acknowledged signing the note and appellant introduced the same in evidence, he made a *prima facie* case, and was entitled to a verdict, in the absence of positive proof that appellant was not a *bona fide* holder. 8 Cyc. 271; 149 S. W. (Ark.) 845.

When a man by his own acts makes it possible to negotiate a note, which is complete upon its face, he can not

escape the liability thereon, even if there was a condition thereto at the making thereof, unless he shows that the payee had knowledge of such conditions. 48 Ark. 454; 56 N. Y. 67; 27 S. W. 1011; 16 Wall. 1.

*Steel, Lake & Head,* for appellee.

The agreement between Shull and the Equitable Manufacturing Company was not a completed contract, and on this point the case is ruled by *Stainback, Crawford Co.* v. *Henderson,* 79 Ark. 176. See, also, 78 Ark. 240.

Even if the contract had been without condition, still it was a mere proposal and until accepted could be withdrawn. 98 Ark. 81.

WOOD, J., (after stating the facts). In *Barr C. & P. Co.* v. *Brooks-Ozan Merc. Co.,* 82 Ark. 219, we held that parol evidence was admissible to prove that a written contract was executed upon condition that it was not to be a completed contract until certain precedent conditions had been fulfilled. And in *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360-365, we said; "Parol evidence is admissible to show that a written instrument was not signed or delivered as a concluded contract, but was only signed and delivered to be held pending the happening of a contingency or the performance of some condition, and that subsequently such contingency did not happen, or such condition was not performed, and therefore that the written instrument did not become effective as a completed contract." See, also, *Graham* v. *Remmel,* 76 Ark. 140.

The appellee showed here that the order and note were not to be sent to the company for a day or two, until he had an opportunity to look over copies of the same and determine whether they were satisfactory, and if not satisfactory, that he might countermand the order. The company's agent who took the order and note violated this agreement by immediately sending in the order and note. This was a fraud upon the appellee.

"Evidence of illegality or fraud in the origin or transfer of commercial paper throws on the holder the burden of proving his good faith." 2 Randolph on Com-

mercial Paper, § 1026. See, also, Daniel on Negotiable Instruments, § 815.

The presumption which the law merchant raises in favor of the holder, in due course, of commercial paper was overcome by the proof on the part of the appellee, and shifted the burden to the appellant to show that he was the holder for value. *Ark. Natl. Bank* v. *Martin,* 110 Ark. 578-587.

The judgment is therefore correct, and it is affirmed.