BROWN *v.* CONE.

Opinion delivered June 25, 1917.

PRINCIPAL AND AGENT—HORSE DEALER—AUTHORITY TO WARRANT.—
   The general agent of a horse dealer *held* to have the implied authority
   to warrant the soundness of horses intrusted to him for sale.

Appeal from Chicot Circuit Court; *Turner Butler,* Judge; reversed.

*Street & Burnside,* for appellant.

1. It was error to give the peremptory instruction. A clear case of warranty by the agent, Shaw, was made. The unsoundness of the mules was not an apparent, but a latent, defect. There was an express warranty as to soundness, and the agent was acting within the apparent scope of his authority. 48 Ark. 138, 145; 19 L. R. A. 822; 103 Ark. 86; 49 *Id.* 323; 96 *Id.* 460; 17 L. R. A. 642; 67 Wash. 403; 29 Am. Cas. 474; Oliphant on Horses (3 ed.), 124; 31 Cyc. 1354.

2. What constitutes a warranty was a question for the jury. 11 Ark. 341; 94 *Id.* 293; 97 *Id.* 438; 99 *Id.* 490; 48 *Id.* 177; 71 *Id.* 305.

3.   There was a conflict in the evidence, and it was error to take the case from the jury.   103 Ark. 425; 89 *Id*. 368.

*U. J. Cone,* for appellee.

1.   Shaw was not the general agent of Cone.   He was a special agent to sell and had no authority to warrant soundness; nor was it within the apparent scope of his authority.   48 Ark. 138; 31 Cyc. 1269, note 34; 103 Ark. 86; 103 Ind. 274; 155 *Id*. 274; 58 N. E. 194; 29 Am. Cas. 474, 480, 483, etc.

A person dealing with an agent must ascertain his authority.   62 Ark. 33, 40; 92 *Id*. 320; 105 *Id*. 111, 115; 117 *Id*. 173; 23 *Id*. 411; 31 *Id*. 212; 100 *Id*. 360; 94 *Id*. 505; 55 *Id*. 629; 31 Cyc. 1322.   The transactions and declarations of an agent are not of themselves evidence of his agency as against the principal.   33 Ark. 252; 78 *Id*. 321; 85 *Id*. 256; 31 *Id*. 212; 93 *Id*. 603; 44 *Id*. 213, etc.   The warranty, if made was a collateral contract.   40 Cyc. 492; 35 *Id*. 366, note 81.   If made, it was outside of the agent's apparent authority.   31 Cyc. 1353; 35 *Id*. 367, note 89; 31 *Id*. 1567-8; Clark's El. Law, No. 149, citing Tiffany on Eq. No. 180.

3.   The burden of proof, as to agency, was on appellant.   The presumption is that Shaw had authority and it devolved on the principal to show that Shaw had no authority to make the warranty.   31 Cyc. 1647 (9); 105 Ark. 111; Am. Cas. 1914, D. P. 800.

4.   The act of the agent, within the scope of his agency, binds the principal.   31 Cyc. 1552; 1554, and note 35; 114 Ala. 377; 136 N. C. 443; 67 L. R. A. 977; 22 Conn. 379; 58 Am. Dec. 429; Mechem on Agency, 550.   The agent was not personally bound.   *Ib.;* 26 N. Y. 117; 134 *Id*. 108; 31 N. E. 246; 89 Am. Dec. 64; 22 Conn. 379; 58 Am. Dec. 429; 11 *Id*. 111; 91 *Id*. 469, 471; 31 Cyc. 1553, 1642; 9 *Id*. 316-17; 92 Ark. 535.

### STATEMENT BY THE COURT.

John Brown sued W. T. Cone and John Shaw before a justice of the peace to recover damages for an alleged

breach of warranty for the soundness of two mules bought by him from them. He obtained judgment by default before the justice of the peace and the defendants appealed to the circuit court. The facts are substantially as follows:

W. T. Cone lived at Montrose, Arkansas, and sent his agent, John Shaw, to Eudora, Arkansas, to sell a car load of mules for him. Shaw sold two young mules to John Brown for the sum of $300. When Brown got home that afternoon he discovered that the mules had a severe form of distemper. He called in a veterinary surgeon to treat the mules. One of them died and the other one finally recovered.

According to the testimony of John Brown and other persons who were present when the sale was made, Shaw warranted the mules to be sound in every respect. Brown said that after he got home and made a closer examination of the mules, he discovered that they had a swelling in the throat which at once developed into a severe case of distemper; that this was not observable except by close inspection of the mules. On the other hand, Shaw denied that he warranted the mules to be sound, and said that he expressly so stated to Brown, and told him that he would have to take the mules on his own judgment or the judgment of some other person who might examine them for him. His testimony was corroborated by that of other witnesses.

Cone testified that Shaw did not have any authority to warrant the soundness of the mules. But it is fairly inferable from all the testimony in the case that Cone was a dealer in mules and that Shaw was his general agent for the sale of them. At the conclusion of the evidence the court directed a verdict for the defendants and the plaintiff has appealed.

HART, J., (after stating the facts). The court directed a verdict for the defendants on the ground that Shaw had no authority, real or apparent, to warrant the soundness of the mules. Counsel for the defendants seek to uphold the verdict on the authority of *United States*

*Bedding Co.* v. *Andre,* 105 Ark. 111. In that case the court held that a traveling salesman has no implied authority to enter into a contract for advertising his principal's business in a newspaper or upon billboards. The court held that to justify an implication of authority in an agent, it must appear that the act of the agent was necessary in order to promote the duty or carry out the purpose expressly delegated to him. The court said: "An agent has authority to do all that he is expressly directed to do; and he also has implied authority to act in accordance with the custom or usage of the business which he is employed to transact and to do what is reasonably necessary to accomplish that which he is directed to do."

We do not think that case controls here. There the agent was a traveling salesman, who was authorized to solicit orders for and make sales of the goods of his principal. The company sent out large printed advertisements with the goods which could be placed on billboards. The agent made a contract with a person to post these advertisements on his billboard. He had no authority to make such a contract, and the court properly held that his act was beyond the apparent scope of his authority.

In *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, in an opinion delivered by the same judge who wrote the opinion in the case just cited, the court held that a principal is not only bound by the acts of his general agent, done under express authority, but he is also bound by all acts of such agent which are within the apparent scope of his authority, whether authorized by the principal or not. The court said that a principal is not only bound by the authority actually given to the general agent, but by the authority which the person dealing with him has a right to believe has been given to him.

In *Keith* v. *Herschberg Optical Co.,* 48 Ark. 138, the court said that a general agency is where there is a delegation to do all acts connected with a particular business or employment. There is some conflict of authority in the decisions as to whether the general agent of a horse

dealer has the implied authority to warrant the soundness of the horses intrusted to him for sale. 31 Cyc. 1354. We believe the better reasoning is that he has such power. The underlying principle is that the agent being in charge of the sale of the horses is intrusted with all powers proper for making the sale, and that a warranty of quality and soundness is usually necessary for the proper performance of that power. Cone was a dealer in horses and shipped them out to nearby towns in carload lots in charge of Shaw to sell them. Shaw had full power to control the terms of sale. This included power to do everything usual and necessary to its accomplishment. It is perfectly evident that Shaw would be very much hampered in the sale of the horses if he did not have the power to warrant their soundness. Shaw was in charge of the business of selling the horses for Cone, and when he warranted the soundness of a horse sold by him, he may be fairly presumed to be acting within the scope of his authority. *Belmont's Executor* v. *Talbot* (Court of Appeals of Kentucky), 51 S. W. 588; *Skinner* v. *Gunn*, 9 Porter (Ala.) 305; *Lane* v. *Dudley* (N. C.), 5 Am. Dec. 523.

It follows that the court erred in directing a verdict for the defendants, and for that error the judgment will be reversed and the cause remanded for a new trial.