## WINDER v. KING et al.  (No. 2913.)*

Court of Civil Appeals of Texas.  Amarillo.
July 27, 1927.

Rehearing Denied Aug. 1, 1927.

**1. Evidence ⬥⟾10(2)—Court takes judicial notice of location and railroads of towns.**

In view of allegations in taxpayer's suit to enjoin county authorities from holding an election to vote on changing the county seat, court took judicial notice of location and railroads of towns involved.

**2. Counties ⬥⟾35(4)—In view of construction statute, county seat election provision means a subsequent election for relocating county seat can be held within 2 years of first (Rev. St. 1925, art. 10, subds. 1, 6, and art. 1601, as amended by Acts 40th Leg. [1927] c. 185).**

In view of Rev. St. 1925, art. 10, subds. 1, 6, which reaffirms the common law relative to interpreting statutes, the 2-year provision in article 1601, as amended by Acts 40th Leg. (1927) c. 185, relative to elections for relocating county seats, means that in designated cases a subsequent election may be held before expiration of 5 years only if held within 2 years, hence, although one election was held in March, another could be held in August of the same year.

**3. Statutes ⬥⟾230—In construing amendments to statutes, court may look to bodies, captions, and emergency clauses, and to facts existing at time of passage.**

In construing an amendment to a statute, the court may look to the body of the act, its caption, its emergency clause, and the body of the act of which the amendment is a part, and may consider the existing facts or conditions at the time.

Appeal from District Court, Hansford County; W. R. Ewing, Judge.

Suit for injunction by J. P. Winder against C. W. King and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Fischer & Fischer, of Amarillo, for appellant.

Hoover & Hoover, of Canadian, Tatum & Strong, of Dalhart, and Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellees.

PER CURIAM. The appellant, Winder, plaintiff below, filed this suit against C. W. King, as county judge of Hansford county, and the four commissioners, to enjoin them from ordering and causing to be held a county seat election. The petition was filed July 1, 1927, and alleges in substance that the town of Hansford, which is more than 5 miles from the geographical center of Hansford county, is and has for a long time prior to the filing of the petition been the county seat of said county; that on March 5, 1927, the defendants, who constituted the commissioners' court of said county, held and canvassed the returns of an election for the purpose of determining whether the county seat should remain in the town of Hansford or be removed to either the town of Spearman or to the town of Gruver, both of which said last-named towns are also situated more than 5 miles from the geographical center of the county; that at said election it was settled and determined by the voters of said county that the county seat should remain at the town of Hansford, neither the town of Spearman nor the town of Gruver having received sufficient votes under the law, to authorize the removal of the county seat; that notwithstanding the fact that the electors of said county had on said 5th day of March, 1927, determined that the county seat should remain at Hansford, the defendants are threatening to call another election immediately and before the expiration of the time limited by law within which another election could be called, for the purpose of removing the county seat from the town of Hansford, and if the defendants are not restrained from so doing they will order said election and cause it to be held, which election will be illegal and void and will result in great expense to the county and the taxpayers thereof; that plaintiff is a resident citizen of said county, paying taxes upon real and personal property owned by him as such resident. It was shown, however, by amended petition, after a temporary restraining order had been granted and before service thereof was had, that the election had been ordered by the defendants to be held on August 6, 1927.

The defendants answered, and upon a hearing on July 6th the court dissolved the restraining order and denied the plaintiff's prayer for injunction, from which judgment this appeal is prosecuted.

The court's findings of fact are, in substance, that on March 5, 1927, an election was held in said county for the purpose of removing the county seat from Hansford, and as a result of such election it was determined that the county seat should remain at Hansford; that on July 2, 1927, the commissioners' court called an election to be held in said county on August 6th, for the purpose of removing the county seat from the town of Hansford, which is not on a railroad and is more than 5 miles from the geographical center of the county, to the town of Spearman, which is in said county and on a railroad.

The court concluded, as matter of law, that under R. S. (1925) art. 1601, which was amended by the Fortieth Legislature, the commissioners' court was authorized to call the election sought to be enjoined, and that such election could be legally held.

[1] The court takes judicial notice, and under the facts alleged and conceded by both parties, the town of Spearman is situated on a railroad operating as a common carrier in

Hansford county, and that Hansford is more than 5 miles from said railroad.

[2] In our opinion, the determination of the controlling issue presented by this appeal requires the construction and interpretation of said article 1601, as amended by the regular session of the Fortieth Legislature. The article was amended by House Bill No. 275, and, including the caption and emergency clause, is as follows:

"H. B. No. 275. Chapter 185.

"An act amending article 1601 of the Revised Civil Statutes of 1925, relating to elections for the removal of county seats; reducing the time within which applications may be made and elections held to remove county seats in certain instances; and declaring an emergency.

"Be it enacted by the Legislature of the state of Texas:

"Section 1. Article 1601 of the Revised Civil Statutes of 1925, is hereby amended so as to hereafter read as follows:

"'Article 1601. Whenever an election for the location or removal of a county seat has been voted on by the electors of any county, and the question settled, it shall not be lawful for a like application to be made for the same purpose within five years thereafter. Provided, that an application may be made and an election held to remove the county seat from a location more than five miles from a railroad operating as a common carrier, to a location on a railroad within two years thereafter.'

"Section 2. The importance of this act and the fact that the change in the statutes as herein provided should be made as soon as possible so as to permit the relocation of county seats to points more convenient and accessible to railroad transportation, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read upon three several days in each house to be suspended, and said rule is hereby suspended, and that this act shall take effect and be in force from and after its passage, and it is so enacted."

The first proposition urged by appellant is, in substance, that an election having been held in Hansford county, on March 5, 1927, for the purpose of determining whether the county seat should remain at Hansford or be removed to either of the other towns and at said election, it having been determined by the electors of said county that the county seat should remain at the town of Hansford, it is unlawful for the defendants, the county judge and commissioners of said county, to call and cause to be held another election for the purpose of removing the county seat from Hansford until after 2 years have elapsed from the date of the last election, March 5, 1927. And in this connection it is contended that upon the proved and admitted facts the court erred, as a matter of law, in concluding that another election could be lawfully held on August 6th next. The correctness of this conclusion rests upon a proper interpretation and construction of the act itself, and we are of the opinion that the court did not err

in dissolving the temporary restraining order and in refusing the injunction.

Revised Statutes, art. 10, prescribes the general rule which shall govern the courts of this state in the construction and interpretation of civil statutory enactments. Subdivision 1 of said article provides:

"The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject-matter."

Subdivision 6 of the article, which we think is also applicable to the instant case, provides:

"In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

These provisions of the statute simply reaffirm and emphasize the general common-law rules governing the construction of the statutes.

The appellant's contention, more specifically stated, is that the proviso in said article 1601 should be construed as expressing the intention of the Legislature to reduce the time of holding a second election, under such special circumstances, so that such election could be held only after 2 years from the date of the last election. On the other hand, the appellees contend that by plain and unambiguous language the Legislature has expressed the intention that such an election should be held within 2 years after the date of the last election.

The power of the Legislature to fix the time for holding the second election is given by the Constitution, and this right is not contested by the appellant.

The language of the proviso in the article is plain and unambiguous, and the contention of appellant that the trial judge's construction of its language might result in the commissioners' court ordering an election every 30 days is a matter with which the courts are not concerned. As said by Judge Phillips, in Vaughan v. Southwestern Surety Ins. Co., 109 Tex. 298, 206 S. W. 920:

"In the face of the plain provision of the act, we are not at liberty to speculate upon the intention of the Legislature in its enactment. Nor is it necessary that we attempt to reconcile any inconsistencies that its operation may entail. The wisdom of the act is not a judicial question. * * * It may in this respect operate unfairly, but that was for the determination of the Legislature. As is said by a competent authority, the remedy for a harsh law is not judicial interpretation, but its amendment or repeal."

[3] It is uniformly held in this state that in construing an amendment to a statute, the court may look to the body of the act, its caption, and its emergency clause, and may consider the existing facts or conditions at the

time and the body of the act of which the amendment is a part. Floydada Independent School Dist. et al. v. Shipley (Tex. Civ. App.) 238 S. W. 1026, and Id. (Tex. Com. App.) 250 S. W. 159. The caption of the act in question recites that it is an amendment of article 1601 relating to elections for the removal of county seats, reducing the time within which applications may be made and elections held, in certain instances. It will be observed that the caption does not state that the time shall be reduced from 5 years to 2 years. The act itself clearly provides that such an election shall be held within 2 years after the last election. It is recited in the emergency clause that the act should become operative as soon as possible, so as to permit the relocation of county seats to points more convenient and accessible to railroad transportation, thus clearly indicating that the Legislature had in view such a state of facts as is presented by this appeal.

Where the language of an act to be construed by the court is, as in this case, plain and unambiguous, the rule governing the court in its interpretation is thus stated ·in Black on Interpretation of Laws (2d Ed.) pp. 45, 49, 51:

"If the language of the statute is plain and free from ambiguity and expresses a single definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey. In other words, a statute must be interpreted literally. Even though the court should be convinced that some other meaning was really intended by the lawmaking power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the Legislature is the law and the courts must not depart from it. * * * This meaning and intention must be sought first of all in the language of the statute itself, for it must be presumed that the means employed by the Legislature to express its will are adequate to the purpose, and do express that will correctly. Page 45. * * * It is beyond question the duty of the courts in construing statutes to give effect to the intent of the lawmaking power and sanction that intent in every legitimate way, in the construction both of statutes and of contracts. The intent of the framers and parties is to be sought, first of all, in the words employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Page 49. * * * Where the language of a statute is plain and unambiguous and conveys a definite and sensible meaning, it is the duty of the court to enforce it according to the obvious meaning of the words employed, without attempting to change it by adopting a different construction, based upon some supposed policy of the Legislature with reference to the subject-matter, or upon consideration of injustice or inconvenience resulting from the literal interpretation of the statute, or even to give the law that efficacy and due effect which it will lack when taken as it stands. In the case supposed, where the language is free from ambiguity and conveys a definite and sensible meaning, the courts should not hesitate to give it a literal interpretation merely because they have doubts as to the wisdom or expediency of the enactment. In such a case, these are not pertinent inquiries for the judicial tribunals. If there be any unwisdom in the law, it is for the Legislature to remedy it. For the courts, the rule is, 'Ita lex scripta est.'" Page 51.

Quoting from Sutherland on Statutory Construction, Judge Phillips, in Gilmore v. Waples et al., 108 Tex. 172, 188 S. W. 1039, says:

"'Courts are not at liberty to speculate upon the intentions of the Legislature where the words are clear, and to construe an act upon their own motions of what ought to have been enacted.. The wisdom of a statute is not a judicial question; nor can courts correct what they may deem excesses or omissions in legislation, or relieve against the occasionally harsh operation of statutory provisions without danger of doing more mischief than good.' There can be no intent of a statute not to be found in its words, and certainly there can be none that is expressly negatived by its words. * * * We are not at liberty to imagine an intent and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting, and remodeling with the view of making the letter express an intent which the statute in its native form does not evidence."

To the same effect are the following authorities: 25 R. C. L. pp. 961, 962, 964; 36 Cyc. p. 1134; Farmers' & Mechanics' Nat. Bank v. Hanks et al., 104 Tex. 321, 137 S. W. 1120, Ann. Cas. 1914B, 368; Fire Ass'n of Philadelphia v. Love, 101 Tex. 380, 108 S. W. 158, ·810.

In view of what has been said, we deem it unnecessary to consider other contentions urged by the parties. The judgment is affirmed.